**Barry H. SHAPIRO, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2986.**

Court of Appeals of Alaska.

June 1, 1990.

James M. Hackett, Fairbanks, for appellant.

Nancy Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Barry H. Shapiro was originally convicted of burglary in the first degree, theft in the second degree, and misconduct involving weapons in the first degree. We affirmed Shapiro's conviction in *Shapiro v. State*, Memorandum Opinion and Judgment (MO & J) No. 1662 (Alaska App., September 21, 1988), but remanded his case to the superior court for additional findings concerning its denial of Shapiro's post-verdict motion for a new trial. On remand, the court reaffirmed its order denying Shapiro's motion. Shapiro appeals. We remand.

Shapiro was tried before a jury presided over by Superior Court Judge Gerald J. Van Hoomissen. After the jury convicted Shapiro, Judge Van Hoomissen resigned from the bench. Shapiro later filed a motion for a new trial, asserting newly discovered evidence as one ground. In support of his newly discovered evidence claim, Shapiro presented the court with affidavits and testimony of several witnesses. Acting Superior Court Judge Christopher E. Zimmerman was assigned to Shapiro's case in place of Judge Van Hoomissen. Judge Zimmerman denied Shapiro's motion, making specific findings concerning most of the newly discovered evidence but neglecting to mention the testimony of one of Shapiro's newly discovered witnesses, Pete Peterson.

On direct appeal, Shapiro argued, in part, that Judge Zimmerman erred in denying his motion for a new trial. Although we upheld Judge Zimmerman's order denying a new trial in most respects, we concluded that the judge's failure to make specific

findings concerning Peterson's testimony warranted a remand for further findings:

> Although we find it unlikely that Judge Zimmerman would have denied Shapiro's motion for a new trial if he had viewed Peterson's testimony as having any significant impact, we nevertheless believe that it would be prudent to remand this case to allow the court to enter an express finding as to whether Peterson's testimony would probably have produced an acquittal.

*Shapiro*, MO & J No. 1662 at 7 (footnote omitted).

On remand, Judge Zimmerman permitted the parties to present oral argument before entering his supplemental findings. During the argument, Shapiro's counsel asked whether Judge Zimmerman had previously reviewed the trial transcript or listened to the electronic recording of testimony at trial. Judge Zimmerman responded that he had not. The judge stated that he had originally decided Shapiro's motion for a new trial based on the arguments and the materials presented by counsel in connection with the motion. Shapiro's counsel then asked Judge Zimmerman to forestall ruling on the credibility of Peterson's newly discovered testimony until the judge had the opportunity to review the trial transcript. Judge Zimmerman declined, stating that he was prepared to proceed.

After hearing argument, Judge Zimmerman stated that, at the original hearing, he had considered Peterson's testimony and had found it to be of doubtful credibility. According to the judge, he had simply neglected to state his finding specifically when he entered his original order denying Shapiro's motion for a new trial. Judge Zimmerman further indicated that he had reviewed the issue in light of the additional arguments and supplemental materials submitted on remand but had not found anything to change his original conclusion. Accordingly, the judge renewed his original order denying the motion for a new trial.

On appeal, Shapiro argues that the superior court erred in failing to review the trial testimony before concluding that Pete Peterson's credibility was doubtful and would

not have been likely to result in an acquittal. We agree.

Judge Zimmerman was appointed to Shapiro's case in place of the retired Judge Van Hoomissen in accordance with Alaska Criminal Rule 25(c), which provides:

> If by reason of absence from the district, death, sickness or other disability, the judge before whom the action has been tried is unable to perform the duties to be performed by the court after a verdict or finding of guilt, any other judge regularly sitting in or assigned to the court may perform those duties; but if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.

In our view, this rule requires a newly substituted judge to become versed in the issues and evidence presented at trial before attempting to preside over post-verdict proceedings. The requirement is implicit in the rule's provision for a new trial whenever the failure to preside at the trial prevents a newly substituted judge from carrying out the court's duties. The requirement is also implicit in Alaska Criminal Rule 25(b), which deals with unavailability of a judge during trial, authorizing a new judge to continue with the trial only if a verbatim record of testimony has been made "so that the judge so continuing may familiarize himself with the previous proceedings at such trial." It is unreasonable to believe that the drafters of the rule expected judges to familiarize themselves with the proceedings at trial when substituting into a case before a verdict was reached but not after.

It is noteworthy that Alaska Criminal Rule 25(c) is substantially similar to Federal Criminal Rule 25(b). Cases interpreting the federal rule have found it improper for a judge entering a case for the first time after verdict to conduct proceedings without first becoming familiar with the testimony presented at trial. *See, e.g., United States v. Larios*, 640 F.2d 938, 942–43 (9th Cir.1981) (finding an abuse of discretion when a judge who entered a case after

verdict proceeded to sentence the defendant without waiting for a transcript to be prepared).

Just how much familiarity with the proceedings at trial is required depends on the issue to be addressed by the substitute judge. The federal cases appear to place a particular premium on reviewing trial testimony when a post-verdict motion requires the evaluation of witness credibility. *See, e.g., Carbo v. United States,* 314 F.2d 718, 749–50 (9th Cir.1963); *Connelly v. United States,* 249 F.2d 576, 579–80 (8th Cir.1957).

In this case, Shapiro's motion for a new trial was based, in relevant part, on a claim of newly discovered evidence. With respect to Pete Peterson's testimony, it is undisputed that Shapiro met the threshold burden of establishing that the proffered evidence was in fact newly discovered and material. *See Salinas v. State,* 373 P.2d 512, 514 (Alaska 1962). That being the case, it became incumbent on the court to determine whether Peterson's testimony would probably have produced an acquittal. *Hensel v. State,* 604 P.2d 222, 231 (Alaska 1979).

To determine the probable impact of Peterson's testimony, the court was, in turn, required to assess its credibility. *Gonzales v. State,* 691 P.2d 285, 287 (Alaska App. 1984). Credibility can rarely be evaluated in the abstract. While, in the most extreme situations, a judge hearing a witness testify might be justified in rejecting the testimony outright, concluding that no reasonable juror could accept it under any circumstances, in almost all other situations, the court must measure the credibility of a newly discovered witness against the backdrop of the evidence at trial before it can make a meaningful and accurate prediction of the effect that the testimony would likely have had on the outcome of trial. As indicated by the court in *Carbo,* 314 F.2d at 749, credibility "apprehends the over-all evaluation of testimony in light of its rationality or internal consistency and the manner in which it hangs together with other evidence."

Here, Judge Zimmerman did not purport to reject Peterson's testimony outright or to find that it was inherently irrational or incapable of being believed. The judge instead found Peterson's credibility to be doubtful—"so doubtful that it would not be substantially likely to produce an acquittal." That Peterson's credibility was doubtful can certainly be surmised without extensive review of the trial testimony. Judge Zimmerman had reasonable grounds for finding Peterson's credibility to be doubtful, and we cannot fault him for doing so.

Predicting the probable effect of "doubtful" testimony on the outcome of trial is another matter, however, for even doubtful testimony may have a significant impact when a jury is faced with weak evidence of guilt, which is itself based on testimony of witnesses whose credibility is doubtful. In our decision affirming Shapiro's conviction, we observed that, "the state's evidence against Shapiro at trial was not overwhelming. The question of guilt hinged on the jury's view of the relative credibility of Shapiro and the witnesses presented by the state." *Shapiro,* MO & J No. 1662 at 7. Under the circumstances, we believe that the superior court could not meaningfully assess the probable impact of Peterson's newly discovered testimony without a thorough awareness of the trial testimony.

We are unpersuaded by the state's arguments to the contrary. The state contends that Judge Zimmerman heard the initial arguments of counsel and their subsequent arguments on remand, and that he had an opportunity to consider all of the materials that the parties submitted. According to the state, the information before the court was sufficient to allow Judge Zimmerman to make a reasoned decision.

Yet the arguments of counsel and their piecemeal references to selected portions of the trial record are hardly an adequate substitute for a more thorough and comprehensive review of the evidence actually presented at trial. Indeed, it is difficult to understand how the court could reconcile conflicting arguments of counsel and their conflicting interpretations of selected portions of the record without an independent

and objective understanding of the trial testimony.

The state contends that Shapiro forfeited his right to complain by failing to raise the issue earlier. The record of proceedings on remand, however, indicates that Shapiro's counsel was unaware that Judge Zimmerman had not taken any affirmative steps to review the trial testimony until the judge candidly acknowledged the fact during oral argument. While counsel was aware that a trial transcript was not prepared before the original hearing was held, he apparently thought the court would familiarize itself with the trial by reviewing the electronically recorded testimony. On the current record, it appears that Shapiro's request for the court to review the trial transcript came immediately after the court first disclosed that it had not reviewed the evidence.

The state nevertheless likens Shapiro's case to a post-conviction relief claim. In such cases, the Alaska Supreme Court has found it unreasonable to expect trial judges to recall all of the pleadings and evidence in the original criminal case and has imposed upon the applicant the burden of calling the court's attention to pertinent portions of the record. *See Fajeriak v. State*, 520 P.2d 795, 806 (Alaska 1974). Post-conviction relief proceedings, however, are separate civil actions. They typically raise relatively narrow legal challenges and are frequently filed years after the challenged convictions have become final. In contrast, the present case deals with a judge substituted into a case within the time specified for the bringing of a motion for a new trial. We do not believe it unreasonable for a defendant faced with a judicial substitution at this stage of the proceedings to expect the new judge to become familiar with the evidence presented at trial. Nor do we believe it unreasonable to impose the burden of becoming familiar upon the court, without the need for the defendant to call the court's attention to particular portions of the evidence.

In conclusion, we hold that the superior court abused its discretion in declining Shapiro's request to review the trial transcript

before determining the probable impact of Pete Peterson's newly discovered testimony. Accordingly, we VACATE the order denying Shapiro's motion for a new trial, and we REMAND to the superior court, with directions to reevaluate Peterson's testimony after conducting a review of the trial transcript.